Donald O. **BURNWORTH**,
Plaintiff–Appellant,

v.

**ADAMS COUNTY**, Defendant–Appellee.

No. 90CA1271.

Colorado Court of Appeals,
Div. II.

Aug. 29, 1991.

Rehearing Denied Oct. 10, 1991.

Certiorari Denied March 10, 1992.

The Law Offices of Richard K. Rufner, Richard K. Rufner, Kitrina J. Anderson, Englewood, for plaintiff-appellant.

Robert J. Loew, Adams County Atty., Rita M. Harrell, Asst. County Atty., Brighton, for defendant-appellee.

Opinion by Judge REED.

Plaintiff, Donald O. Burnworth, appeals from the judgment dismissing his claims against defendant, Adams County. We reverse and remand.

The amended complaint alleged that, in 1989, the county relocated a drain on the west side of plaintiff's property and that, as a result of the drain's relocation, plaintiff's property was damaged by the continual accumulation of debris and the deterioration of his driveway. Plaintiff further alleged that, although the county had replaced his driveway three times, the driveway continues to crack and split and water has begun to bubble through the cracks.

In his first claim for relief, plaintiff alleged that the county installed, operated, and maintained the drain in a careless and negligent manner, causing recurrent damage to his property. In his second claim for relief, plaintiff alleged that the county's installation and maintenance of the drain has resulted in a continuing nuisance because of the constant accumulation of debris, water, muck, silt, mildew, and foul odor. The third claim for relief alleged that, as a result of the county's negligence, plaintiff suffered severe anxiety and emotional distress.

The complaint sought both damages and an injunction requiring the county to move the drain so that water and debris would not run onto his property.

The county filed a motion to dismiss the complaint pursuant to C.R.C.P. 12(b)(5), asserting that plaintiff's claims were barred by the Governmental Immunity Act. The trial court granted the motion after determining that the drain was a "storm drain" or "surface water drain" and that the county had not waived its sovereign immunity for this type of facility pursuant to § 24–10–106, C.R.S. (1988 Repl.Vol. 10A).

Plaintiff contends that the trial court erred in dismissing his claims. He argues that the county's immunity has been waived with respect to actions concerning the operation and maintenance of storm drains pursuant to § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A). That section provides:

"Sovereign immunity is waived by a public entity in an action for injuries resulting from:

. . . .

"(f) The operation and maintenance of any *public water facility*, gas facility, *sanitation facility*, electrical facility, power facility, or swimming facility by such public entity." (emphasis supplied).

Plaintiff contends that a storm drain constitutes either a "public water facility" or a "sanitation facility" within the meaning of this provision. We agree that a storm drain, operated and maintained by a county, is a "sanitation facility" for purposes of the Governmental Immunity Act.

If a plain reading of a statute does not reveal the legislative intent, we may interpret the statute by considering

laws upon the same or similar subjects. *Colorado Civil Rights Commission v. North Washington Fire Protection District*, 772 P.2d 70 (Colo.1989); *Colorado–Ute Electric Ass'n v. Public Utilities Commission*, 760 P.2d 627 (Colo.1988). Further, we must presume that the General Assembly intended a just and reasonable result when it enacted a statute. *Colorado–Ute Electric Ass'n v. Public Utilities Commission, supra.*

Here, the term "sanitation facility" is not specifically defined in the Colorado statutes. However, the General Assembly has authorized counties to construct and operate "sewerage facilities." Section 30–20–402(1)(a) and (b), C.R.S. (1986 Repl.Vol. 12A). Such facilities include, by definition, "any ... *devices used in the collection,* treatment, or disposition *of* sewage ... or *storm, flood, or surface drainage waters, including all* inlets, collection, *drainage,* or disposal *lines,* intercepting sewers, joint storm and sanitary sewers...." Section 30–20–401(4), C.R.S. (1986 Repl.Vol. 12A). The same definition applies to municipal sewerage facilities. Section 31–35–401(6), C.R.S. (1986 Repl.Vol. 12B).

Similarly, the facilities which *sanitation* districts are authorized to provide include "*storm* or sanitary *sewers,* or both, *flood and surface drainage, treatment and disposal works and facilities,* and all necessary or proper equipment and appurtenances incident thereto." Section 32–1–103(18), C.R.S. (1990 Cum.Supp.).

In at least three cases decided since the enactment of the Governmental Immunity Act, this court has upheld actions against public entities arising from the maintenance of a sewer, a storm sewer, or a storm drainage system. In *Fleckman v. City of Greeley*, 673 P.2d 376 (Colo.App. 1983), this court held that the Colorado Governmental Immunity Act's authorization of tort actions arising from the operation and maintenance of public water facilities or sanitation facilities extended to claims arising from the blockage of a sewer line. Further, in *Salazar v. City of Sheridan*, 44 Colo.App. 443, 618 P.2d 708 (1980), this court held that plaintiffs were entitled to sue the city for injuries incurred in an explosion of a storm sewer filled with methane gas. Finally, in *Docheff v. City of Broomfield*, 623 P.2d 69 (Colo.App.1980), we held that the city's discharge of drainage water from a storm drainage system onto the adjacent landowner's property constituted an enjoinable, continuing trespass. Neither *Salazar* nor *Docheff* made mention of the Governmental Immunity Act.

It thus appears that imposition of liability against public entities for negligent operation and maintenance of sewerage facilities was well established prior to the 1986 amendments to the Governmental Immunity Act, which further restricted the liability of those entities. *See* Berry & Tanoue, *Amendments to the Colorado Governmental Immunity Act,* 15 Colo.Law. 1193 (1986). Had the General Assembly intended to eliminate liability for the operation and maintenance of sewerage facilities, including storm drains, the Act could have been further revised at that time or in subsequent sessions of the General Assembly. *See Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987) (legislature is presumed cognizant of judicial precedent in particular area).

Here, the trial court characterized the drain referred to in the complaint as a "storm drain" or "surface water drain." Nevertheless, it concluded that such a drain could not be a "sanitation facility" because such facilities collected and disposed of only unsanitary waste materials.

Based upon the authorities cited above, we conclude that the trial court construed the term "sanitation facility" too narrowly. *See City of Aspen v. Meserole*, 803 P.2d 950 (Colo.1990). We further conclude that a storm drain or surface water drain is a "sewerage facility" which is also a "sanitation facility" as that term is used in § 24–10–106(1)(f) of the Governmental Immunity Act. Accordingly, the county's immunity for actions arising out of the operation and maintenance of the storm drain was waived, and the trial court erred in dismissing the complaint.

Because of our resolution of this issue, it is unnecessary for us to address plaintiff's remaining contention.

The judgment is reversed, and the cause is remanded to the trial court for reinstatement of the complaint and for further proceedings consistent with this opinion.

SMITH and CRISWELL, JJ., concur.