Fredrick T. FARINA and Karen A. Farina, Plaintiffs–Appellees,

v.

**CITY AND COUNTY OF DENVER, a municipal corporation; Department of Health & Hospital, City & County of Denver; Denver International Airport Medical Clinic; and James E. McKinley, M.D., Defendants–Appellants.**

**No. 95CA1531.**

Colorado Court of Appeals,
Div. II.

Oct. 10, 1996.

Rehearing Denied Dec. 12, 1996.

Certiorari Denied July 28, 1997.

Palmer & Paoli, P.C., James H. Guest, Jeffrey A. Esses, Denver, for Plaintiffs–Appellees.

Office of the City Attorney, Daniel E. Muse, City Attorney, Carl R. Mangino, Assistant City Attorney, Efrain M. Padro, Assistant City Attorney, Denver, for Defendants–Appellants.

Opinion by Judge CRISWELL.

In this medical malpractice action, defendants, the City and County of Denver, the City and County of Denver Department of Health and Hospitals (Health Department), Denver International Airport Medical Clinic, and James E. McKinley, M.D., appeal from the trial court's order determining that they were not immune from liability under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S. (1988 Repl. Vol. 10A). We affirm.

The relevant facts are not in dispute.

Denver is authorized by its charter to establish, operate, and maintain a hospital to serve its inhabitants. *See* §§ 25–29–101 and 25–19–102, C.R.S. (1996 Cum.Supp.) (charter requires Denver to fulfill certain "public health functions" and, prior to April 19, 1994, it had established a department of health and hospitals, as well as programs, services, and facilities "to carry out these public functions").

Some time prior to February 1991, Denver determined to construct a new international airport at some distance outside its municipal boundaries. In conjunction with this construction, an agreement was entered into between the Health Department and Denver's Department of Public Works, pursuant to which the Health Department undertook to perform medical services for those persons at the construction site needing such services. While the agreement called for the Health Department to establish an on-site medical facility, referred to as the "Denver International Airport Medical Clinic" (Clinic), it also required that medical services were to be rendered, where appropriate, both at the outpatient clinic of Denver General Hospital and for in-patient treatment at that facility. The Health Department agreed, where ap-

propriate, to transport patients from the Clinic to these other facilities in the Health Department's emergency medical vehicles.

Although the Clinic was named as a party defendant, there is no evidence that it has any separate existence or that it is a separate juridical entity. It is simply a facility operated by the Health Department, to the same extent that the Department operates other, associated facilities, such as Denver General Hospital.

In May 1993, plaintiff Fredrick T. Farina injured his back in a work-related accident at the construction site. He sought treatment at the Clinic, where he was examined, treated, and released to work with lifting restrictions that same day. His condition, however, progressively worsened over the next few days, and he began to lose feeling in his legs and buttocks. He continued to seek treatment at the Clinic.

Several days later, having become unable to walk, he was transported by ambulance to Denver General Hospital where he underwent emergency surgery on his back. Since this surgery, Farina has been partially paralyzed from the waist down.

Claiming that the Clinic personnel had negligently failed to diagnose his condition properly, Farina and his wife, Karen, brought suit against defendants and others seeking damages. In response, the defendants unsuccessfully moved to dismiss the action for lack of subject matter jurisdiction based upon the GIA and now appeal from the denial of their motion.

The GIA provides that a "public entity," defined as "the state, county, city and county, incorporated city or town, school district, special improvement district," or any other political subdivision, § 24–10–103(5), C.R.S. (1996 Cum.Supp.), and its employees are immune from liability for all claims that lie or could lie in tort, except as expressly provided in the GIA. *See* §§ 24–10–105, C.R.S. (1988 Repl.Vol. 10A) and 24–10–108, C.R.S. (1996 Cum.Supp.).

Under § 24–10–106(1)(b), C.R.S. (1988 Repl.Vol. 10A), however, immunity is waived in an action seeking compensation for injuries resulting from the "operation of any *public hospital,* correctional facility ... or jail by such public entity." (emphasis supplied) Under this statute, "operation" means an act or omission of a public entity or its employees "with respect to the purposes of any public hospital...." Section 24–10–103(3)(a), C.R.S. (1988 Repl.Vol. 10A). However, the term "public hospital" is not defined.

Defendants concede that the Clinic is a "hospital" for purposes of the GIA. They assert, however, that, because that facility does not serve all of the public, but only a restricted portion, *i.e.,* only those injured or becoming ill at the construction site, the facility is not a "public" hospital under the statute. In urging this point, defendants rely both upon § 25–3–309, C.R.S. (1989 Repl.Vol. 11A), which also uses the term "public hospital," and upon *Denver v. Gallegos,* 916 P.2d 509 (Colo.1996), which was decided after the trial court entered its judgment in this cause. We conclude, however, that neither of these bases supports defendants' assertion.

In considering defendants' contention, we first note our uncertainty over the manner in which the GIA is to be interpreted. In *Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994), a unanimous supreme court noted that prior opinions by that court had reached inconsistent conclusions with respect to the standard pursuant to which the GIA was to be applied—some opinions had concluded that the grant of immunity was in derogation of the common law and that such *grant* should be strictly construed, while other opinions had concluded that immunity was the common law status and, hence, that the statutory *exceptions* to such immunity should be narrowly construed. The *Bertrand* court, in interpreting one of the statutory exceptions, purported to resolve this conflict by concluding that there was no sovereign or governmental immunity under the Colorado common law at the time of the adoption of the GIA and that, accordingly, the GIA's *exceptions* to immunity must receive a broad interpretation.

More recently, however, in *Denver v. Gallegos, supra,* the majority of the court, while acknowledging that the *grant* of immunity was in derogation of the common law

and citing *Bertrand* with approval, nevertheless concluded that the statutory *exceptions* "are to be narrowly interpreted to avoid imposing liability not specifically provided for in the statute." *Denver v. Gallegos, supra,* 916 P.2d at 511. We find it difficult to reconcile the pronouncement of *Bertrand* with the command of *Gallegos.*

Nevertheless, in interpreting any statute, a court must seek to determine legislative intent. *Denver v. Gallegos, supra.* And, to apply the term, "public hospital," as used by the GIA, to any particular facility, the context within which that term is used must be considered. *See Kittinger v. Colorado Springs,* 872 P.2d 1265 (Colo.App.1993) (considering meaning of "public building," as used by the GIA). Likewise, absent some contrary statutory indication, the words must be given their familiar and ordinary meaning. *See State v. Hartsough,* 790 P.2d 836 (Colo. 1990) (context in which words "public hospital" are used in GIA "strongly suggests that the section was intended to apply to public facilities designed to hold people"; hence, veterinary hospital not included within term).

Applying these considerations here, we conclude that the Clinic is a "public hospital" under the GIA.

### I.

■ The defendants, however, argue that the act of which § 25–3–309 is a part uses the term "public hospital," that that statute requires such a hospital to serve all of the inhabitants of the county in which it is established, and that a hospital not meeting this requirement is, thus, not a "public hospital" under the GIA. We disagree.

First, § 25–3–309 is a part of the act authorizing a *county* to establish a hospital to provide medical services within that county. While that act, §§ 25–3–301 through 25–3–314, C.R.S. (1989 Repl.Vol. 11A), uses the term, "public hospital," in referring to such institutions, nothing within that act defines that term. And, more importantly, that act makes clear that its provisions apply only to hospitals established by counties; it does not purport to regulate other public hospitals operated either by municipalities or by some state agency. Indeed, the very provision relied upon by defendants does not apply to "public hospitals," generally, but is limited in its application. Section 25–3–309 says:

> *Every hospital established under this part 3* shall be for the benefit of the inhabitants of such county and of any person falling sick or injured or maimed within its limits. (emphasis supplied)

Hence, if it were determined that a "public hospital" under the GIA is only one that is referred to in the statute relied upon by defendants, all hospitals operated by municipalities or by some state agency would be excluded from the statutory exception to immunity. Yet, such a construction would render the explicit definition of "operation," in § 24–10–103(3)(a), which refers to an act or omission by a "public entity" meaningless, because the latter term includes all manner of state and local governments, in addition to counties. Because such an interpretation would do violence to the plain meaning of this express definition, we may not adopt it. *See Karlin v. Conard,* 876 P.2d 64 (Colo.App. 1993).

Further, the act of which § 25–3–309 is a part is not the only statute in which the General Assembly has referred to a "public hospital." For example, § 13–21–115.7, C.R.S. (1996 Cum.Supp.) immunizes an uncompensated director, officer, or trustee of a non-profit corporation from civil liability for acts or omissions within the scope of his or her services as such. Under this act, the term "nonprofit corporation" includes a "public hospital" certified pursuant to § 25–1–107(1)(*l*)(II), C.R.S. (1996 Cum.Supp.). And, under this latter statute, such a hospital is one "wholly owned and operated by the state or any of its political subdivisions."

We conclude, however, that it is unnecessary to rely upon any statutory definition, not found in the GIA itself, in order to determine the meaning of the pertinent term.

### II.

■ Defendants also contend that, irrespective of the requirement of § 25–3–309, because the Clinic was not operated so as to serve *all* the members of the public, it was

not a "public" facility under the analysis adopted in *Denver v. Gallegos, supra.* Again, we disagree.

In *Denver v. Gallegos,* the question presented was whether a water meter pit, located on private property and owned and maintained by the property owner, was a "public water facility" under § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A). The supreme court concluded, for two alternative reasons, that it was not.

First, the court referred to the definition of a "public facility" to be found in § 37–60–126(1)(b), C.R.S. (1996 Cum.Supp.), which included the requirement that the facility be "operated for the benefit of the public." It concluded that a single water meter pit, not owned by the public and serving only a single user, was not for a "public" benefit, but for the benefit of the single owner only.

Second, the court noted that, unlike the exception for public hospitals, any claim involving a public water facility had to arise from the "operation and maintenance" of such a facility. And, because the public entity involved in *Gallegos* had no maintenance responsibility for the water meter pit, the GIA imposed no liability upon it, in any event.

Nothing in *Gallegos* suggests that the term, "public," whenever it appears in the GIA, must be read as referring *only* to *all* members of the public, so that a facility or hospital, although owned and controlled by a public entity, could not be considered to be a "public" facility or a "public" hospital, if it were operated so as to serve merely a segment of the public. On the contrary, we conclude that, so long as the facility is owned and operated by the public entity, is devoted to a public purpose, and is beneficial to a substantial segment of the public, it is a public facility or hospital under the GIA.

In *Colorado Ass'n of Public Employees v. Board of Regents,* 804 P.2d 138 (Colo.1990), for example, the supreme court emphasized that the significant distinction between a public corporation and a private one is whether the corporation was created as an instrument of the state to increase governmental efficiency, to supply public wants, or to promote the public welfare. Hence, there, the court concluded that, because of the control exercised by a state agency, University Hospital had to be considered a public, not a private, institution. *See Davis v. People ex rel. Public Utilities Commission,* 79 Colo. 642, 644, 247 P. 801, 802 (1926) (public does not necessarily mean everyone—common carrier that extended service to "considerable fraction" of populace, was serving the public).

■ Here, the service being provided was simply a part of the overall health services provided by the Health Department; the Clinic was an extension of the services rendered by Denver General Hospital, which admittedly serves all of the general populace in Denver, and it was established so as to render those services more efficiently to a significant segment of the public. There may be instances in which the availability of a publicly operated facility or of a publicly-provided service is so limited that it cannot be deemed to be a public facility or a public service. *See Kittinger v. Colorado Springs, supra* (business invitee is a member of the public, but cause remanded to determine whether portion of government building not accessible by general public was a "public building" under the GIA). The availability of the hospital services here, however, was not so limited.

We conclude, therefore, that the trial court properly determined that the Clinic is a "public hospital" under the GIA.

The order is affirmed.

PLANK and KAPELKE, JJ., concur.