**Ann deBOER, Plaintiff–Appellant,**

**v.**

**UTE WATER CONSERVANCY DISTRICT, Defendant–Appellee.**

**No. 99CA1725.**

Colorado Court of Appeals, Div. II.

Aug. 31, 2000.

Certiorari Granted Feb. 5, 2001.

See also, 996 P.2d 754.

Golden, Mumby, Summers, Livingston, & Kane, LLP, William M. Kane, Grand Junction, Colorado, for Plaintiff–Appellant.

Kotel and Unkeless, Randy Kotel, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge NIETO.

In this personal injury action, plaintiff, Ann deBoer, appeals from the trial court's dismissal of her complaint against defendant, Ute Water Conservancy District (Ute). We affirm.

Plaintiff was injured when she fell into a water meter pit that was located on property owned by Frank and Charlene Jones (landowners). The water meter pit, however, was owned, operated, and maintained by Ute.

Plaintiff brought separate actions against Ute and the owners of the property. These cases were subsequently consolidated in the trial court.

In her claim against the landowners, plaintiff alleged that the landowners had actual knowledge of the hazardous nature of the water meter pit and that they were negligent in failing to warn plaintiff of that hazard. The landowners moved for summary judgment. Based on Ute's exclusive ownership of, and obligation to maintain the water meter pit, the landowners asserted that they owed no duty to plaintiff under § 13–21–115, C.R.S.1999, the premises liability statute.

The trial court granted the landowners' summary judgment motion, and plaintiff separately appealed from that decision under a C.R.C.P. 54(b) certification. On appeal, a division of this court affirmed, holding that the trial court had properly concluded that the landowners owed plaintiff no duty of care under § 13–21–115. *See deBoer v. Jones,* 996 P.2d 754 (Colo.App.2000).

In her claim against Ute, plaintiff alleged that Ute had negligently operated and maintained the water meter pit (1) by constructing the pit in a manner which made it barely visible, (2) by failing to use a cover which could be easily and securely fastened, and (3) by failing to secure the cover to the rim of the pit after the last reading of the water meter.

Ute moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1999. Ute asserted that *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996) and *Horrell v. City of Aurora,* 976 P.2d 315 (Colo.App.1998) (certiorari dismissed on motion of parties) were dispositive of her claims and mandated dismissal of plaintiff's complaint against it.

Plaintiff maintained that Ute's immunity had been waived under § 24–10–106(1)(f), C.R.S.1999, which provides that a public entity's immunity from suit is waived in an action for injuries resulting from the "operation and maintenance of any public water facility . . . ." Further, plaintiff argued that the decision in *Gallegos* was distinguishable because the public entity in that case, unlike here, did not own the water meter, nor was it responsible for maintaining it.

However, in *Horrell,* which involved a water meter pit located on private property that was owned, operated, and maintained by the public entity, a division of this court held that the water meter pit was not part of a "public facility," and therefore immunity was not waived under the GIA. The trial court concluded that *Horrell* was controlling and dis-

missed plaintiff's complaint against Ute. This appeal followed.

Section 24–10–106(1)(f) waives the public entity's immunity only for the "operation and maintenance of any public water facility." Therefore, to be within this waiver, the plaintiff must show that the public entity's negligence was related to a "public water facility" and that the negligence arose from the "operation and maintenance" of that facility.

In *City & County of Denver v. Gallegos, supra,* the supreme court held that a water meter pit that was located on private property was not a "public water facility" for purposes of § 24–10–106(1)(f) because it solely benefited the property on which it was located. Additionally, the court held that Denver's immunity was not waived under § 24–10–106(1)(f) because Denver did not operate and maintain the water meter pit.

The *Gallegos* court narrowly interpreted the waiver of immunity in § 24–10–106(1)(f). Thereafter, in contrast, the supreme court determined that the proper standard for interpreting a waiver of immunity in the GIA is a "deferential construction in favor of victims injured by the negligence of the state." *Walton v. State,* 968 P.2d 636 (Colo.1998).

In *Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000), the supreme court resolved these conflicting standards by stating: "Without disturbing the interpretation of the term 'public facility' that we proffered in *Gallegos,* we disapprove of the case's language that immunity waivers are to be construed narrowly." *Corsentino v. Cordova, supra,* 4 P.3d at 1086. Thus, although waivers of immunity are not to be narrowly construed, *Gallegos* is still controlling on the question of whether a water meter pit solely benefiting the property on which it is located is a public water facility.

In *Horrell v. City of Aurora, supra,* a division of this court addressed waiver of a public entity's immunity under § 24–10–106(1)(f) when the entity owned, operated, and maintained a water meter pit located on private property. The division noted that the *Gallegos* court held that the determinative factor as to whether a water meter pit was a "public water facility" was whether it was operated for the benefit of the public. Thus, because the water meter pit in *Horrell* only benefited the property on which it was located, the court held that it was not a "public water facility" and that Aurora's immunity had not been waived under § 24–10–106(1)(f). The division concluded that, under the rationale of the *Gallegos* decision, the fact that the water meter pit was owned, operated, and maintained by Aurora was a "distinction without a difference." *Horrell v. City of Aurora, supra,* 976 P.2d at 316.

Here, as in *Horrell,* the water meter pit was located on private property, and was owned, operated, and maintained by the public entity. The water meter pit solely benefited the property on which it was located. Thus, under the reasoning of both *Gallegos* and *Horrell,* we conclude the water meter pit is not a "public water facility," and Ute's immunity from suit is not waived under § 24–10–106(1)(f).

Contrary to plaintiff's contention, the supreme court in *Gallegos* did not predicate its determination that the water meter pit was not a "public water facility" on Denver's lack of ownership of the water meter. Rather, in resolving that issue, the court looked only at whether the water meter provided a public benefit or whether it solely benefited the property on which it was located. The court considered the question of who owned the water meter only in determining whether Denver operated and maintained the water meter pit for purposes of § 24–10–106(1)(f). However, the court specifically noted, "[F]or purposes of immunity waiver, ownership of the water meter pits is not dispositive." *City & County of Denver v. Gallegos, supra,* 916 P.2d at 512.

We recognize that this result leaves plaintiff without a remedy for injuries she claims were caused by the negligence of a another party. However, *Gallegos* is controlling, and *Horrell* is persuasive. Thus, the doctrine of *stare decisis* compels this result. As the General Assembly stated in the GIA's declaration of policy, "the doctrine of sovereign immunity ... is, in some instances, an inequitable doctrine." *See* § 24–10–102, C.R.S. 1999. It may be necessary for the General Assembly to amend the GIA or the premises

liability statute in order to provide a remedy under circumstances similar to those presented here.

In summary, we conclude that the trial court did not err in determining that Ute's immunity from suit had not been waived under § 24–10–106(1)(f). Hence, the court properly granted Ute's motion to dismiss.

The judgment of dismissal is affirmed.

Judge PLANK concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

Because I would decline to follow *Horrell v. City of Aurora,* 976 P.2d 315 (Colo.App. 1998) and because I find *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996) to be distinguishable, I respectfully dissent.

## I. Statutory Interpretation

As the majority acknowledges, the supreme court has definitively held that the waiver provisions of the Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1999, must be deferentially construed in favor of victims injured as a result of the negligence of a governmental entity. *Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000).

Thus, to the extent that the issue on the merits here presents a close question, the governing standard of review militates in favor of construing the GIA here so as to hold that defendant, Ute Water Conservancy District (Ute), is not immune from liability.

## II. Immunity

I agree with plaintiff's contention that Ute is not immune from liability under the GIA.

Section 24–10–106(1)(f), C.R.S.1999 provides that a public entity's sovereign immunity is waived in an action for injuries resulting from:

The operation and maintenance of any public water facility ... by such public entity.

With regard to liability in water meter pit cases, the supreme court in *Gallegos* set out two requirements for determining whether a public entity waives its immunity under § 24–10–106(1)(f).

First, a reviewing court must determine whether the water meter pit is a public facility. *City & County of Denver v. Gallegos, supra.* To constitute a public facility, the water meter pit must be "for the benefit of the public." *City & County of Denver v. Gallegos, supra,* 916 P.2d at 511.

Second, a court must determine whether the public entity operates and maintains the water meter pit.

In determining the meaning of the GIA, we must presume that, in enacting it, the General Assembly intended a just and reasonable result. *Burnworth v. Adams County,* 826 P.2d 368 (Colo.App.1991).

With regard to the first requirement, I agree with Judge Jones' dissent in *Horrell* that a publicly owned water meter pit exists "for the benefit of the public." Unlike in *Gallegos,* the water meter pit here benefited the public because, although it served water only to the private property owned by Frank and Charlene Jones, it was owned, operated, and maintained by Ute for the benefit of the public, not just for the landowners.

In my view, all parts of a public water facility owned, operated, and maintained by a governmental entity must be considered to exist "for the benefit of the public." Otherwise, such facilities will argue successfully that significant components of the facilities are immune from liability. Thus, for example, a person injured by a negligently installed water pipe would be met with the argument that the water pipe existed for the benefit of a particular resident and, thus, was not part of a public water facility.

In my view, the water meter pit here, as the one in *Horrell,* is more closely analogous to the storm drain in *Burnworth v. Adams County, supra.* There, a division of this court concluded that a storm drain located on private property, but operated and maintained by the public entity, was a "sanitation facility" under § 24–10–106(1)(f), C.R.S.1999, and that, thus, the government had waived its immunity. The court in *Gallegos* distinguished the water meter pit there from the storm drain in *Burnworth,* stating that be-

cause the water meter pit was only for the benefit of the land on which it was located, and the storm drain benefited the general public, *Burnworth* was not persuasive. However, as noted above, I find such postulated distinction as lacking a substantive basis.

Instead, I agree with Judge Jones' dissent in *Horrell* that a water meter pit owned, operated, and maintained by a governmental entity, as the one here, is analogous to the storm drain in *Burnworth* because it allows the county to maintain its water allocation to county residents and ensures that the landowners are properly charged for the water used. In addition, here, the water meter pit monitors water usage from public water pipes and is operated and maintained by the public entity. Therefore, in my view, the water meter pit is a public water facility under § 24–10–106(1)(f).

I disagree with the majority that the court in *Gallegos* looked only at whether the water meter pit provided a public benefit in determining whether it was a public water facility. To the contrary, a key factor in *Gallegos* was that the landowner owned, *maintained, and operated* it.

As the majority points out, the *Gallegos* court noted that ownership of the water meter pit is not dispositive. However, in my view, this observation by the *Gallegos* court should not be relied on to conclude that a water district is protected by governmental immunity regardless of who owns the water meter pit. Rather, the *Gallegos* court stated that "ownership is not dispositive" because "the GIA only requires that a governmental entity be engaged in the *operation and maintenance* of a public water facility in order for immunity to be waived." *City & County of Denver v. Gallegos, supra,* 916 P.2d at 512 (emphasis added).

The court also pointed out that "the legislature intended for governmental entities to be liable only when they both operate *and* maintain a public water facility." *City & County of Denver v. Gallegos, supra,* 916 P.2d at 512 (emphasis added). Thus, it held that, although the Denver Water Department operated the water meter pits in question there, it was not liable because the landowners maintained them.

Here, it is undisputed that Ute owns, maintains, and operates the pit in question. It does so for the benefit of the public, not just for the landowners. Accordingly, in my view, the water meter pit in question is a public water facility, and Ute waived its governmental immunity because it operates *and* maintains the water meter pit in question. *See* § 24–10–106(1)(f); *City & County of Denver v. Gallegos, supra.*

In addition, I believe the majority opinion leads to an unintended unreasonable result.

I recognize that the intent of the GIA was to limit governmental agencies' liability for tortious conduct and, as the majority opinion states, that the General Assembly in drafting the GIA acknowledged that in some instances it may be an inequitable doctrine. *See* § 24–10–102, C.R.S.1999. However, as the court in *Burnworth* recognized, if the General Assembly had intended to eliminate liability where governmental agencies operate and maintain "public water facilities," it would have done so specifically. Instead, the General Assembly did just the opposite and created a specific waiver of immunity in circumstances where governmental agencies operate and maintain "public water facilities." In my view, this includes a water meter pit located on private property, at least one, as here, operated and maintained by a public water facility.

Further, I do not believe that the General Assembly intended to deny a legal remedy to injured plaintiffs in litigation against both a governmental entity and private landowners.

In *deBoer v. Jones,* 996 P.2d 754 (Colo. App.2000), a division of this court, of which I was a member, held that plaintiff could not proceed against the landowners because the water meter pit was owned, operated, and maintained by Ute. However, the majority here concludes that plaintiff may not proceed against Ute because the very same water meter pit is operated for the benefit of the very same landowners. Consequently, the result here is inconsistent with the principle that the General Assembly intends to avoid unjust results. *See Burnworth v. Adams County, supra.*

The previous disposition in *deBoer v. Jones, supra*, together with the majority's opinion here, will send people running to the dictionary to gain a complete understanding of the phrase *damnum absque injuria.* That phrase, which means "harm for which there is no legal remedy," is well illustrated by the circumstances presented here. Accordingly, I would reverse the trial court's judgment and remand the cause for further proceedings.