Concerning the APPLICATION FOR WATER RIGHTS OF HINES HIGHLANDS LIMITED PARTNERSHIP and Aspen Highlands Mountain Limited Liability Company, in Pitkin County.

ASPEN WILDERNESS WORKSHOP, INC.; Constance Harvey; and Joy and Samuel Caudill, Objectors–Appellants,

v.

HINES HIGHLANDS LIMITED PARTNERSHIP and Aspen Highlands Mountain Limited Liability Company, Applicants–Appellees,

and

The City of Aspen; Board of County Commissioners of Pitkin County; Harold Simpson, Colorado State Engineer; Orlyn Bell, Division Engineer, Water Division 5; and Colorado Water Conservation Board, Objectors–Appellees.

No. 95SA294.

Supreme Court of Colorado, En Banc.

Dec. 9, 1996.

Law Offices of Alison Maynard, Alison Maynard, Denver, for Objectors–Appellants.

Patrick & Stowell, P.C., Kevin Patrick, Brian Stowell, Aspen, Holland & Hart, L.L.P., Arthur B. Ferguson, Jr., Elizabeth A. Phelan, Stephanie S. Padilla, Denver, for Applicants–Appellees.

Office of the City Attorney, John P. Worcester, Aspen, Alperstein & Covell, P.C., Cynthia F. Covell, Denver, for Objector–Appellee City of Aspen.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Jennifer L. Gimbel, Deputy Attorney General, Lee E. Miller, First Assistant Attorney

General, Peter A. Fahmy, Assistant Attorney General, Natural Resources Section, Edward R. Kowalski, Assistant Attorney General, Natural Resources Section, Denver, for Objectors–Appellees Colorado State Engineer; Division Engineer, Water Division No. 5; and Colorado Water Conservation Board.

No appearance for Objector–Appellee Board of County Commissioners of Pitkin County.

Justice KOURLIS delivered the Opinion of the Court.

The objectors-appellants, Aspen Wilderness Workshop, Inc., Constance Harvey, and Joy and Samuel Caudill (collectively, the appellants), appeal from an order of the District Court, Water Division 5 (water court) granting the applicants-appellees', Hines Highlands Limited Partnership and Aspen Highlands Mountain Limited Liability Company (collectively, Highlands), application for a conditional water decree. We conclude that the water court did not err in granting the conditional decree and that it correctly denied the appellants' request for attorney fees and costs. Accordingly, we affirm the order of the water court.[1]

## I.

This case involves applications for water rights for a ski area development plan. In December 1993, Highlands purchased the Aspen Highlands Ski Area and adjacent property in Pitkin County, Colorado. In order to redevelop and expand the base village and ski area, Highlands determined it needed additional water. Highlands commenced plans for an appropriation of water that would satisfy its projected demand for the new project.

On December 31, 1993, Highlands filed two water applications in Water Division 5, which were later consolidated. In the first application, Highlands requested junior conditional surface and underground water rights decrees that would enable Highlands to use water from Maroon Creek in Pitkin County through direct stream diversions and wells.[2] Maroon Creek is a headwater tributary to the Roaring Fork River, which is a tributary to the Colorado River. Highlands requested water usage for domestic, irrigation, municipal, commercial, industrial, recreation, snowmaking, piscatorial, fire protection, augmentation and exchange purposes.

In the second application, Highlands sought approval of a plan for augmentation and a change in point of diversion for a senior water right already held by Highlands.[3] Under the proposed plan for augmentation, out-of-priority diversions from Maroon Creek would be augmented with water from the Stein–Arlian Marolt Ditch (SAM), a senior Maroon Creek right held by Highlands, and with water released from Ruedi Reservoir.

A number of parties filed statements of opposition in response to Highlands' water applications. The objectors included the appellants;[4] the City of Aspen (Aspen); the

1. This court has direct appellate review of water court adjudications. *See* Colo. Const. art. VI, § 2(2); § 13–4–102(1)(d), 6A C.R.S. (1987); C.A.R. 1(a)(2).

2. In its original application, Highlands sought decrees for four surface diversion structures in the amount of 4.5 c.f.s. each, and four wells in the amount of 1.0 c.f.s. each, for a total of 22.0 c.f.s. However, the ultimate decree permits diversion of only 4.5 c.f.s. from all decreed points of diversion combined as per a stipulation between the City of Aspen and Highlands.

3. Section 37–92–103(9), 15 C.R.S. (1996 Supp.), provides in pertinent part:

"Plan for augmentation" means a detailed program, which may be either temporary or perpetual in duration, to increase the supply of water available for beneficial use in a division or portion thereof by the development of new or alternate means or points of diversion, by a pooling of water resources, by water exchange projects, by providing substitute supplies of water, by the development of new sources of water, or by any other appropriate means. A "change of water right" is defined, in pertinent part, as "a change in the point of diversion" of a water right. § 37–92–103(5), 15 C.R.S. (1990).

4. Aspen Wilderness Workshop is an organization with an interest in preserving the natural resources of the Roaring Fork Valley. The individual objectors, Constance Harvey and Joy and Samuel Caudill, all have senior water rights on Maroon Creek.

Board of County Commissioners of Pitkin County (Pitkin County); the Colorado Water Conservation Board (CWCB);[5] and the State and Division Engineers (Engineers).

Before trial, Highlands entered into stipulations with Aspen, Pitkin County, the CWCB, and the Engineers. First, Highlands agreed to curtail diversions when the CWCB's decreed instream flow rights would be injured. Second, the stipulating parties acknowledged that Highlands has a contractual right with Aspen to a firm supply of 1.0 c.f.s. of water from Maroon Creek to be supplied by Aspen through Aspen's municipal diversion structure. Highlands agreed to use this water right as its primary source of water for the ski area development project. Third, Highlands agreed to install, maintain, and monitor measuring devices that the Division Engineer considers necessary for administration of the decree and to provide the CWCB and the Engineers with access to such devices. Finally, Highlands indicated by stipulation prior to trial that it did not intend to pursue SAM as an augmentation source.[6] Highlands provided the water judge with a proposed decree pursuant to section 37–92–305(3), 15 C.R.S. (1990), which referenced the various stipulation agreements into which Highlands had entered.

Following the trial, the water court entered a decree affirming Highlands' 1993 conditional water rights on Maroon Creek for all uses except municipal. In addition, the water court rejected the plan for augmentation, but granted the change in point of diversion.[7] The decree entered by the water court explicitly subjects the conditional water rights to the curtailment of out-of-priority diversions and to administration by the Division Engineer.

The water court approved the decree "on the terms and conditions set out in the proposed decree." The judgment incorporated by reference those portions of the proposed decree tendered by Highlands that related to the approval of the application for the new conditional water rights. However, the water court did not revise the proposed decree either to exclude any references to the proposed plan for augmentation and municipal uses or to incorporate a stipulation Highlands tendered at trial.

The appellants now appeal those portions of the water court decree granting the surface water diversions and denying the appellants' requests for attorney fees and costs.

## II.

Appellants identified the following issues in their Notice of Appeal:

(1) Whether the decree entered in this case, awarding water rights, protects against injury to senior water rights, and is consistent with the judgment of the trial court;

(2) Whether "redundancy of supply" constitutes a beneficial use of water,[8] and whether the Applicants have satisfied the "can and will" requirements for appropriating a conditional water right pursuant to Sec. 37–92–305(b), C.R.S.;

(3) Whether the water court based its finding that Maroon Creek is not overappropriated on competent evidence; and

(4) Whether the water court abused its discretion in denying or in not ruling upon [the appellants'] motions for relief and sanctions under the discovery

---

**5.** The CWCB is the holder of the instream flow decree for 14.0 c.f.s. in Maroon Creek. § 37–92–102(3), 15 C.R.S. (1990 & 1996 Supp.).

**6.** Highlands and the stipulating parties also made certain agreements with respect to the requested change of point of diversion, water releases from Ruedi Reservoir, a reporting and monitoring system for Highlands' usage of water, and a reconstruction of Aspen's diversion struc-

ture. None of those portions of the stipulations are at issue here.

**7.** Those portions of the water court's judgment are not at issue in this appeal except to the extent that certain parts of the plan for augmentation are a source of the applicants' request for attorney fees and costs.

**8.** The "redundancy of supply" question was not pursued on appeal and we do not address it.

rules, Rule 41(a), and Rule 54(d),[9] C.R.C.P.

The core issue before us is whether Highlands satisfied its burden of showing that it can and will put the conditional rights to beneficial use within a reasonable time. Appellants' principal contention is that there is insufficient water in Maroon Creek to permit diversions under the junior conditional rights, and that, therefore, Highlands is unable to satisfy the requirement of showing that it "can" divert. We conclude that Highlands introduced competent evidence sufficient to support the issuance of a conditional decree.

### A.

The doctrine of prior appropriation governs the use of water rights in the streams of Colorado. Colo. Const. art. XVI, §§ 5, 6; *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164, 169–70 (Colo.1988). Because the development of water can be expensive and time-consuming, our legislature has implemented a system by which a prospective water user may reserve its place in line in the priority system by seeking a conditional decree, provided that the user demonstrates to the water court that the water can and will be put to beneficial use within a reasonable time. Under the doctrine of prior appropriation, the user obtains a conditional water right decree to reserve the right to utilize a fixed portion of water for a specified future use.[10]

An applicant for a conditional water right decree has the initial burden of producing evidence sufficient to satisfy the statutory requirements. *See* § 37–92–304(3), 15 C.R.S. (1990); *Simpson v. Yale Investments, Inc.,* 886 P.2d 689, 696 (Colo.1994). Section 37–92–305(9)(b), 15 C.R.S. (1990) (can and will statute),[11] requires proof by a preponderance of the evidence that the applicant can and will complete the appropriation of water with diligence. *FWS Land & Cattle Co. v. State,* 795 P.2d 837, 840 (Colo.1990).

■ Under the can and will statute, the applicant must make a threshold showing of reasonable availability of water to prove that the applicant "can" complete the appropriation.[12] *See Board of County Comm'rs v. United States,* 891 P.2d 952 (Colo.1995). The applicant for water rights must demonstrate that "water is available based upon river conditions existing at the time of the application, in priority, in sufficient quantities and on sufficiently frequent occasions, to enable the applicant to complete the appropriation with diligence and within a reasonable time." *Id.* at 962; *see also Southeastern Colo. Water*

---

**9.** Appellants did not pursue the issue concerning their requested relief under Rule 54(d) of the Colorado Rules of Civil Procedure and we do not address it.

**10.** A "water right" is "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." § 37–92–103(12), 15 C.R.S. (1990). A "conditional water right" means "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1990). An "appropriation" is defined as an "application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law[.]" § 37–92–103(3)(a), 15 C.R.S. (1990).

Conditional water decrees allow water appropriations to relate back to the time of the first step in obtaining an appropriation. *Gibbs v. Wolf Land Co.,* 856 P.2d 798, 799 n. 1 (Colo. 1993). To initiate an appropriation, the applicant must demonstrate intent to put the water to a beneficial use and manifest that intent by a formal act. *City of Thornton v. City of Fort Collins,* 830 P.2d 915, 924–27 (Colo.1992).

**11.** Section 37–92–305(9)(b) states as follows:

No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

§ 37–92–305(9)(b), 15 C.R.S. (1990).

**12.** The can and will statute also requires proof that water will be diverted and that the project will be completed with diligence prior to the issuance of a conditional water right decree. *Fox v. Division Engineer,* 810 P.2d 644, 646 (Colo.1991). Such proof demonstrates that the applicant for a conditional water right decree "will" complete the appropriation. The "will" portion of the can and will statute, however, is not at issue in this appeal.

*Conservancy Dist. v. City of Florence,* 688 P.2d 715, 717–18 (Colo.1984).

■ A showing of reasonable availability does not require a demonstration that water will always be available to the full extent applied for in the decree.[13] The applicant need only prove that there is a substantial probability that the appropriation can and will be completed, based upon necessarily imperfect predictions of future conditions. *Board of County Comm'rs,* 891 P.2d at 961. This approach to obtaining a conditional water right decree promotes the development and maximum utilization of Colorado's scarce water resources. *See id.* at 965. ·

### B.

The doctrine of prior appropriation protects senior appropriators from injury by junior appropriators. Colo. Const. art. XVI, §§ 5, 6; *Central Colo. Water Conservancy Dist. v. Simpson,* 877 P.2d 335, 344 (Colo. 1994). That doctrine reflects the tenet, "first in time first in right." *Comstock v. Ramsay,* 55 Colo. 244, 254–55, 133 P. 1107, 1110–11 (1913). All priorities take precedence in their appropriate order. § 37–92–301(3), 15 C.R.S. (1990).

■ Any potential injury caused by new appropriations from streams that are not over-appropriated can normally be mitigated if junior appropriators curtail their diversions when senior users need water. "[S]enior rights are not injured by junior diversions as long as those diversions occur in priority." *Southeastern Colo. Water Conservancy Dist. v. City of Florence,* 688 P.2d 715, 717 (Colo. 1984). Thus, unless injury to a senior user will result every time a junior user diverts water, the junior appropriator is entitled to his or her priority if the necessary showing

of facts constituting an appropriation has been made. *Clay Spring Cattle Co. v. Bassett,* 76 Colo. 510, 512, 233 P. 156, 157 (1925). Once the junior appropriator has obtained a conditional water right decree, the junior may not, when prior appropriators need the water, make a diversion. *Id.* Section 37–92–102(2)(d), 15 C.R.S. (1990), mandates that any lawful diversion be reduced if that reduction would increase the amount of water available to and required by water rights having senior priorities. Nevertheless, if a stream is not over-appropriated, there are always times when prior appropriators do not need the water. *Bassett,* 76 Colo. at 512, 233 P. at 157. It is during those times when the junior is entitled to make a diversion to his or her own beneficial use. *Id.* at 512–13, 233 P. at 157.

■ We recognize that there may be situations in which any use by a junior appropriator would cause persistent injury to senior water users. In those cases, the water court must eliminate the injury by imposing conditions on the exercise of the junior right. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164, 170 (Colo.1988). The water court may require the applicant to provide augmentation water to protect against injury to senior users. *See, e.g., Lionelle v. Southeastern Colo. Water Conservancy Dist.,* 676 P.2d 1162 (Colo. 1984).

### C.

■ Once an applicant for a conditional water right decree has met his or her burden of proving that the water sought *can* be diverted from the stream system in priority, the burden of production shifts to the objector. If the objector is disputing that the applicant "can" complete the appropriation,

---

**13.** The appellants argue that a prerequisite for obtaining a conditional water right decree is a showing by the applicant that water will be available any time the applicant wishes to make a diversion. We reject that argument. If we were to accept the appellants' contention, it would be virtually impossible for any applicant to obtain new conditional water rights. Rather, Colorado has a priority system precisely for situations such as the one presented in this case. The priority system allows the adjudication of new junior water rights while at the same time avoiding injury to senior water rights by preserving the priority of senior users. Colo. Const. art. XVI, § 6; *Central Colo. Water Conservancy Dist. v. Simpson,* 877 P.2d 335, 344 (Colo.1994). Such a system permits both the orderly administration of water rights and the maximum beneficial use of Colorado's scarce water resources. *See* Colo. Const. art. XVI, § 6; § 37–92–102(1)(a), 15 C.R.S. (1990); *Fellhauer v. People,* 167 Colo. 320, 336, 447 P.2d 986, 994 (1968) (requirement of maximum utilization of water of this state implicit in Colorado Constitution).

the objector may attempt to show that river conditions do not permit the proposed appropriation. Whether the proposed appropriation can and will be completed is a question of fact for the water court to determine. The issues of water availability and injurious effect are inherently fact specific and thus require factual findings by the water court. *Simpson v. Yale Investments, Inc.*, 886 P.2d 689, 696 (Colo.1994) (injurious effect). The water court's findings will not be disturbed on appeal if they are supported by competent evidence in the record. *American Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 367–68 (Colo.), *cert. denied*, — U.S. —, 115 S.Ct. 575, 130 L.Ed.2d 491 (1994); *Gibbs v. Wolf Land Co.*, 856 P.2d 798, 801 (Colo. 1993). The appellate court should not disturb the factual findings of the water court unless the evidence is "wholly insufficient" to support the decision. *Consolidated Home Supply Ditch & Reservoir Co. v. Town of Berthoud*, 896 P.2d 260, 267 (Colo.1995).

■ We now hold that the record in this case contains competent evidence to support the factual findings of the water court. First, the water court found that Maroon Creek is not over-appropriated. Evidence to support that finding includes testimony by two experts, based in part on a computer model developed by an expert. The water court relied on the expert testimony of Scott Fifer, Highlands' hydrologist, and Kerry Sundeen, a hydrologist employed by Aspen. Mr. Fifer and Mr. Sundeen both concluded that injury to senior water users would be infrequent. Mr. Fifer testified that dry years may exist one in twenty years. Mr. Sundeen stated that shortages may occur three in twenty-three years.

■ It is not the duty of this court to engage in independent evaluation of the credibility of the experts who testified. *Simpson v. Yale Investments, Inc.*, 886 P.2d 689, 699 (Colo.1994). Thus, since the water court's finding that Highlands can divert water out

of Maroon Creek in priority was supported by expert testimony and reports, we will not overturn that finding.

Second, the water court adopted terms and conditions designed to prevent injury to senior appropriators and to prohibit any out-of-priority diversions. When Highlands' junior water rights are subjected to a valid call by a senior water right, Highlands will curtail its diversions to avoid any injury to the existing water rights.

Thus, the record demonstrates substantial proof that water will be reasonably available for Highlands' use in priority under the terms and conditions of the decree.

### D.

■ The appellants also assert a public interest argument as an objection to this conditional water right decree. The appellants contend that this decree will someday place the Division Engineer in the "untenable position" of having to choose between terminating the flow of water to the ski resort for domestic uses and allowing injury to the instream flow. We reject this argument. First, a public interest argument is not a valid objection to a decree for a new conditional water right because such an argument conflicts with the doctrine of prior appropriation. *Board of County Comm'rs v. United States*, 891 P.2d 952, 972–73 (Colo.1995). Second, such an argument presupposes that the existing rights will not be administered fairly and in compliance with the priority system.

The appellants question the Engineers' willingness and ability to enforce and administer existing water rights.[14] This is not the proper forum for such a challenge. Section 37–92–501(1), 15 C.R.S. (1990), grants the Engineers sole authority with regard to the administration, distribution, and regulation of Colorado's waters. Furthermore, statutory law requires the Division Engineer to determine when senior rights are being injured

14. The appellants also challenge the sufficiency of the Engineers' performance of their duties by arguing that the decree entered by the water court is not administrable. Mr. Orlyn Bell, the Division Engineer for Water Division 5, testified that in his opinion, the water rights in this case are capable of administration. Such testimony constitutes competent evidence that these water rights are administrable, and the appellants presented no countervailing evidence to refute that testimony.

and to order that exercise of the junior rights be curtailed if necessary to avoid injury. § 37–92–502(2)(a), 15 C.R.S. (1990). There is no reason for this court to conclude that the Division Engineer will not perform his statutory duties with respect to Highlands' conditional water rights in this case.

Finally, to the extent the appellants argue injury to the CWCB's decreed instream flow rights, we note that the CWCB was an objector in this case. The CWCB holds the decreed instream flow right. *See* § 37–92–102(3), 15 C.R.S. (1990 & 1996 Supp.). Highlands and the CWCB entered into a stipulation in which Highlands agreed to curtail any diversions that would result in injury to the instream flow. That stipulation is referenced in the proposed decree, which in turn is incorporated into the water court's order. Therefore, the argument of injury to the instream flow is much less persuasive when the holder of that right was a party to this action, satisfied itself that its interests were being protected, and did not oppose entry of the decree.[15]

### III.

We now turn to the issue of whether the water court abused its discretion by denying the appellants' various requests for attorney fees and costs. We conclude that it did not.

### A.

The appellants first assert that they were entitled to attorney fees and costs pursuant to Rule 37 of the Colorado Rules of Civil Procedure because Highlands violated discovery rules by "refusing to produce" its trial exhibits and Mr. Fifer's computer streamflow model. The appellants argue that the water court abused its discretion by denying the appellants' requests for such fees and costs. We disagree.

■ Pretrial discovery issues and the awarding of costs are committed to the sound discretion of the trial court. *Bond v. District Court*, 682 P.2d 33, 40 (Colo.1984) (pretrial discovery issues); *Lamont v. Riverside Irr. Dist.*, 179 Colo. 134, 141, 498 P.2d 1150, 1154

(1972) (costs). Only in the case of a clear abuse of discretion will a trial court's pretrial discovery ruling be overturned. *Hill v. Boatright*, 890 P.2d 180, 184 (Colo.App.1994), *rev'd on other grounds*, 919 P.2d 221 (Colo. 1996). We may properly conclude that the water court abused its discretion only if we can say with fair assurance, based upon the particular circumstances confronting the water court, that the court's decision was manifestly arbitrary, unreasonable, or unfair. *See People v. Milton*, 732 P.2d 1199, 1207 (Colo. 1987).

We first address the claim that Highlands did not produce its trial exhibits until a week before trial. The appellants made a request pursuant to Rule 34 of the Colorado Rules of Civil Procedure that Highlands produce its trial exhibits. Highlands responded to the appellants' request approximately four months prior to trial. Highlands made the requested documents available for inspection and copying. The appellants, dissatisfied with this response, demanded that copies be made for them at Highlands' expense. Highlands then offered to make the copies and mail them to the appellants and to bill the appellants for the copying costs. The appellants refused that offer, and eventually filed a motion to compel production.

■ The crux of this discovery dispute is whether the appellants or Highlands should bear the copying costs for the production of Highlands' trial exhibits. We conclude that Highlands produced the documents within the meaning of Rule 34 by making them available for inspection and copying. Unless otherwise ordered, the requesting party must bear the costs associated with copying the trial exhibits.

Rule 34(a) states in pertinent part: "Any party may serve on any other party a request: (1) To produce and permit the party making the request, or someone acting on his behalf, *to inspect and copy*, any designated documents. . . ." C.R.C.P. 34(a) (emphasis added). Rule 37 of the Colorado Rules of Civil Procedure allows a discovering party to move to compel production of documents if

---

**15.** The issue of whether the appellants have standing to assert injury to the CWCB's instream flow rights is not before us and we do not address it.

the party served with a Rule 34 request "fails to *permit inspection* as requested[.]" C.R.C.P. 37(a)(1) (emphasis added).[16]

The plain language of both Rules 34(a) and 37 indicates that Highlands need only have made the requested documents available for the appellants to inspect and to make their own copies. Such reading is consistent with case law interpreting Federal Rule of Civil Procedure 34, which is substantially similar to Colorado Rule 34. *See Obiajulu v. City of Rochester,* 166 F.R.D. 293, 297 (W.D.N.Y. 1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials."); *Delozier v. First Nat'l Bank,* 109 F.R.D. 161, 164 (E.D.Tenn.1986) (if, after an inspection of records requested for production, the requesting party desires that portions be photocopied, then such expense will be borne by the requesting party); *Lenard v. Greenville Municipal Separate Sch. Dist.,* 75 F.R.D. 448, 451 (N.D.Miss.1977) (the availability for inspection and/or copying of requested records will satisfy the request for production). The appellants fail to cite any authority to the contrary.

We conclude that the water court correctly denied the appellants' request for attorney fees and costs. Contrary to the appellants' claim, Highlands produced the trial exhibits within the meaning of Rule 34(a) by making them available for the appellants to inspect and copy. Highlands was under no obligation to make copies of the documents for the appellants at Highlands' own expense. Furthermore, while the appellants claim that they only received such documents a week before trial, and thus were severely prejudiced, we note that any such prejudice was through no fault of Highlands.

Next, we address the appellants' assertion that they are entitled to attorney fees and costs due to Highlands' alleged failure to produce Mr. Fifer's computer stream-flow model by not producing the computer disk of the model. We reject this contention.

In February 1995, two months before trial, Highlands offered to produce a print out of the model. The appellants viewed that offer as inadequate, claiming that they needed the disk to ascertain Mr. Fifer's inputs and assumptions. Highlands maintained that it did not need to produce the disk because a print out would reveal all the input data, model parameters, and conclusions associated with the model.

A week before trial, Highlands voluntarily turned over the disk to the appellants, subject to a protective order that mandated that the model not be altered and that the disk along with any copies be returned to Highlands after trial. The water court did find that Highlands' initial position of withholding the disk was reasonable.

■ We hold that the water court did not abuse its discretion in denying the appellants' request for attorney fees and costs. There is very little authority discussing the production of computer models. The water court analogized the model to scientific evidence in a criminal case, whereby the evidence itself is available for both parties to test, but each party must utilize its own technology to test the substance. *See, e.g., Fenton v. Fibreboard Corp.,* 827 P.2d 564, 567 (Colo.App.1991) (tissue samples available to both parties, failure to disclose slides of those samples not a discovery abuse), *rev'd on other grounds,* 845 P.2d 1168 (Colo.1993).

Here, the appellants received a print out of the model approximately two months prior to trial. As long as the appellants could readily identify the input and output data for each variable in the program or for each simulation, a print out of the model should suffice to enable the appellants to defend against the conclusions of Mr. Fifer's report. *See Bartley v. Isuzu Motors Ltd.,* 151 F.R.D. 659 (D.Colo.1993). We hold that the water court did not abuse its discretion by denying the appellants any attorney fees and costs in connection with Highlands' initial refusal to produce a disk of the computer stream-flow model.

**B.**

Next, the appellants argue that the water court abused its discretion by denying the

---

**16.** The quoted language from Rules 34 and 37 of the Colorado Rules of Civil Procedure reflects the rules in effect at the time this case was filed. Rules 34 and 37 have since been amended.

appellants' request for attorney fees and costs set out in their motion to dismiss SAM as an augmentation source. We disagree.

Prior to trial, Highlands filed and requested that the water court accept and approve individual stipulations and agreements entered into between Highlands and the CWCB, the Engineers, and Aspen. Those stipulations contemplated the withdrawal of SAM as a source of augmentation water in connection with Highlands' proposed plan for augmentation. The court took the stipulations under advisement, but declined to approve them before trial.

The appellants filed a motion to dismiss the SAM augmentation water source pursuant to Rule 41(a)(2) of the Colorado Rules of Civil Procedure indicating their intention to seek an award of attorney fees and costs in connection with the withdrawal of SAM. Without the court having ruled on that motion, the case proceeded to trial. Highlands did not present any evidence on SAM.

Following the conclusion of the trial, the water court approved the stipulations that were consistent with its judgment. In addition, in its post-trial rulings, the water court granted the appellants' Rule 41(a)(2) motion to dismiss, but denied the request for fees and costs associated with that motion. We now affirm the water court's denial of the appellants' request for attorney fees and costs.

■ Rule 41(a)(2) provides that, with exceptions not applicable here, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." C.R.C.P. 41(a)(2). That rule gives the plaintiff the right to dismiss a claim without prejudice, provided the court can ensure the defendant will not be unfairly prejudiced. *American Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 380 (Colo.), *cert. denied,* — U.S. —, 115 S.Ct. 575, 130 L.Ed.2d 491 (1994), (hereinafter, *AWD* ). To protect a defendant from prejudice, a trial court may "impose as a term and condition of dismissal a requirement that the plaintiff pay the defendant the expenses incurred in defending the suit, which usually include reasonable attorney fees." *Id.* at 386; *Tillery v.*

*District Court,* 692 P.2d 1079, 1084 (Colo. 1984).

This court has recently held that Rule 41(a)(2) applies to water right adjudications. *AWD,* 874 P.2d at 381. *AWD* explained that an applicant may voluntarily withdraw all or a portion of his or her water rights application without prejudice under Rule 41(a)(2), as long as the objectors will not be prejudiced. *Id.*

We note that the language of Rule 41(a)(2) provides *the plaintiff* with the right to dismiss a claim, whereas here, the appellants, not the applicants, filed the Rule 41(a)(2) motion to dismiss. However, before the appellants filed the motion to dismiss SAM as an augmentation source, Highlands had announced its intention to dismiss that claim voluntarily pursuant to the stipulations with the CWCB, the Engineers, and Aspen. Therefore, the appellants were the movants in form only. Through its request for the court's approval of the stipulations, Highlands had already moved the court to dismiss the portion of its plan for augmentation that proposed to use SAM for augmentation water.

■ Once a court has granted a motion for dismissal, Rule 41(a)(2) protects objectors from prejudice by permitting a water court to impose such terms and conditions as the court deems proper. *Id.* at 386. The terms and conditions of a dismissal may include an award of attorney fees and costs to the objectors. *Id.* at 386; *Tillery,* 692 P.2d at 1084. The rationale behind an award of costs to objectors under Rule 41(a)(2) is to reimburse the objectors for the costs suffered as a result of defending the dismissed action. *AWD,* 874 P.2d at 380.

■ The determination of the terms and conditions of dismissal under Rule 41(a)(2) is discretionary with the trial court and will not be disturbed on review absent an abuse of that discretion. *Id.* at 386. The appellate court should not disturb the trial court's rulings unless there is a showing that the findings and conclusions of the trial court are so manifestly against the weight of evidence as to compel a contrary result. *See Smith v.*

*Weindrop,* 833 P.2d 856, 857 (Colo.App.1992) (discussing Rule 41(b) determinations).

In this case, while the water court granted the appellants' Rule 41(a)(2) motion to dismiss, it denied the appellants' request for attorney fees. The water court concluded that the appellants were not entitled to attorney fees "because it was reasonable to continue to assert the claim until the eve of trial[.]" We conclude that this ruling was not manifestly against the weight of the evidence. Highlands maintained SAM as part of its plan for augmentation pending agreement between Highlands and the CWCB, the Engineers, and Aspen, and the water court so found. We hold that the water court did not abuse its discretion here, and therefore affirm the water court's refusal to condition the appellants' motion to dismiss on an award of attorney fees.

### IV.

Accordingly, the order of the water court is affirmed.

HOBBS, J., does not participate.