**Cynthia WISDOM and Jay Wisdom, Plaintiffs–Appellants,**

v.

**CITY OF STERLING, Colorado, Defendant–Appellee.**

No. 99CA2044.

Colorado Court of Appeals, Div. A.

March 15, 2001.

Certiorari Denied Nov. 27, 2001. *

Salmon, Lampert & Clor, P.C., Brian J. Lampert, Francine R. Salazar, Englewood, CO; Clover & Killin, LLP, Kimbra Killin, Holyoke, CO, for Plaintiffs–Appellants.

Halaby Cross & Schluter, Theodore S. Halaby, Sue Ann Haskell, Denver, CO, for Defendant–Appellee.

Opinion by Judge DAILEY.

In this personal injury action, plaintiffs, Cynthia Wisdom and Jay Wisdom, appeal from the trial court's dismissal of their complaint against defendant, the City of Sterling. We reverse and remand with directions.

Cynthia Wisdom was injured when she fell into a water meter pit that was located on one of the city's sidewalks. Although the water meter pit was owned, operated, and maintained by the city, it serviced only a single private business.

Plaintiffs brought this action against the city asserting claims for negligence and loss of consortium. Plaintiffs alleged that the water meter pit constituted a "public water facility" and that the city had negligently operated and maintained it by failing to keep it in a safe condition. Plaintiffs further argued that the water meter pit constituted a dangerous condition of a public sidewalk.

The City moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2000. The City asserted that under the decisions of *City & County of Denver v. Gallegos*, 916 P.2d 509 (Colo.1996), *overruled in part on other grounds by Corsentino v. Cordova*, 4 P.3d 1082 (Colo.2000); and *Horrell v. City of Aurora*, 976 P.2d 315 (Colo.App.1998), the water meter pit did not constitute a "public water facility" for purposes of a waiver of immunity under § 24–10–106(1)(f), C.R.S. 2000.

The City also asserted that, because plaintiffs' injuries arose from the condition of the water meter pit, not from the sidewalk, and because it neither knew nor should have known of a dangerous condition involving the water meter in question, the waiver of immunity under § 24–10–106(1)(d)(I), C.R.S.2000, for a dangerous condition of a public sidewalk, did not apply.

In response, plaintiffs argued that: (1) the decision in *Gallegos* was distinguishable because the water meter pit in that case was located on private property, and the public entity there, unlike here, did not own the water meter, nor was it responsible for maintaining it; and (2) the water meter pit was part of the sidewalk, and the city knew or should have known that an unsecured water meter pit cover constituted a dangerous condition of a public sidewalk.

The trial court concluded that the water meter pit did not constitute a "public water facility" for purposes of a waiver of immunity under § 24–10–106(1)(f) and also that the City's immunity was not waived under § 24–10–106(1)(d)(I) for a "dangerous condition" of a public sidewalk. Consequently, the court dismissed plaintiffs' complaint.

## I. Public Water Facility

Plaintiffs contend that the trial court erred in determining that the water meter pit did not constitute a public water facility for purposes of § 24–10–106(1)(f). Under the circumstances presented here, we agree.

Section 24–10–106(1)(f) provides that a public entity's immunity from suit is waived in an action for injuries resulting from the "operation and maintenance of any public water facility."

In *City & County of Denver v. Gallegos, supra*, the supreme court addressed the question of whether a water meter pit was a "public water facility" for purposes of § 24–10–106(1)(f). The water meter pit in that case was located on private property, and under the Denver Water Department's Operating Rules, the landowner owned the water meter pit and was responsible for its maintenance.

In analyzing whether Denver's immunity was waived, the court noted that the General Assembly had provided that governmental entities should be liable for their actions only to such an extent and subject to such conditions as are provided in the GIA. Therefore, the court concluded that the GIA required the waiver provisions to be interpreted narrowly.

The court additionally noted that neither the term "public water facility" nor the term "public facility" was defined in the GIA. Relying on the definition of "public facility" in

an unrelated statutory provision concerning "Water Conservation Board and Compacts," see § 37–60–126(1)(b), C.R.S.2000, the court concluded that the determinative factor in defining a public facility was whether the facility itself was operated for the benefit of the public. The court found that the public facilities listed in that statute were distinguishable from water meter pits, because water meter pits are used for the sole benefit of the property on which they are located and are not beneficial to the general public.

The court also distinguished the decision in *Burnworth v. Adams County,* 826 P.2d 368 (Colo.App.1991), in which a division of this court held that a storm drain that had been relocated onto a landowner's property was a public facility. The court noted that the storm drain was both operated and maintained by a county. Thus, despite the storm drain's location on private property, the court concluded that it was a public water facility because it was operated for the benefit of the general public. The court determined that while the location of a water meter pit is not determinative in defining whether it is a public water facility, its location is directly related to its public benefit.

Since the *Gallegos* decision, the supreme court has held that the GIA's waiver provisions, rather than being interpreted narrowly as posited in *Gallegos,* are to be construed deferentially in favor of injured persons. *See State v. Nieto,* 993 P.2d 493 (Colo.2000); *Walton v. State,* 968 P.2d 636 (Colo.1998). Indeed, the court explicitly overruled *Gallegos* to the extent it held that waiver provisions are to be interpreted narrowly. *Corsentino v. Cordova, supra.*

In *Corsentino,* the court stated that it was not disturbing its interpretation in *Gallegos* of the term "public facilities." However, the court presumably made this statement because interpretation of that term was not at issue in *Corsentino.*

Here, the Sterling Municipal Code defines the "City's water system" as including "wells, pumping stations, transmission lines, taps, and other related appurtenances owned or operated by the city." "Tap" is defined as follows:

*Tap* may be used interchangeably with the terms "metered tap," "water service connection," "service tap," "service" and other similar terms. These terms refer to the location or structure where water supplied by the city enters on individual property.

Based on these provisions, the city's water system clearly includes any water meter pit cover, water meter pit, or water meter.

We also note that the term "water service" is defined in the Sterling Municipal Code as "the receipt of water from the city's water system on private property." Thus, the city recognizes that a water meter, by necessity, serves private property.

These definitions are consistent with the definition of "water facilities" in x30–20–401(6), C.R.S.2000, concerning public improvements. That definition includes "any one or more devices used in the . . . distribution of water for domestic and other legal uses, including . . . transmission, and distribution lines, infiltration galleries, hydrants, meters, and . . . other equipment and appurtenances." This definition, like those set forth in the Sterling Municipal Code, provides that all devices used to distribute water, including meters, are included within the term "water facilities."

Based on the foregoing, we conclude that the water meter pit here that is owned by a city, located on city property, and operated and maintained by the city, serves a public benefit. Accordingly, under such circumstances, we conclude that the water meter pit constitutes a "public water facility," and that the public entity's immunity is waived under x24–10–106(1)(f).

Such a result is not inconsistent with the supreme court's decision in *Gallegos.* As noted, in that case the water meter pit was located on private property and was neither owned nor maintained by the public entity. Similarly, we find the decisions in *Horrell v. City of Aurora, supra,* and *deBoer v. Ute Water Conservancy District,* 17 P.3d 187 (Colo.App. 2000) (*cert. granted* February 5, 2001), distinguishable from the instant case. Both of those cases involved water meter pits that were located on private property.

Moreover, as set forth in its municipal code, the city recognized the integral role that water meters provide in the distribution of water to its customers. Additionally, water meters enable a public entity to monitor water usage which allows it to control consumption by utilizing billing methods that penalize excessive usage. This clearly serves a public benefit, especially in the arid West, where water is scarce. *See Aspen Wilderness Workshop, Inc. v. Hines Highlands Ltd. Partnership*, 929 P.2d 718, 724 (Colo.1996) (stating goal of promoting "the development and maximum utilization of Colorado's scarce water resources"). Although a water meter provides a private benefit, it also provides a public benefit by permitting a city to control the consumption of water, thereby maximizing its benefit to all customers.

Therefore, we conclude that the trial court erred in determining that the city's immunity was not waived under x24–10–106(1)(f), and the judgment dismissing plaintiffs' claims on that basis must be reversed.

## II. Dangerous Condition of a Public Sidewalk

Plaintiffs next contend that the trial court erred in finding that the water meter pit did not constitute a "dangerous condition" of a public sidewalk. Because we have already determined that the trial court erred in dismissing plaintiff's claims, we need not address this contention. *See Smith v. Town of Estes Park*, 944 P.2d 571 (Colo.App.1996).

Accordingly, the judgment is reversed, and the cause is remanded for reinstatement of plaintiffs' complaint and for further proceedings consistent with this opinion.

PIERCE ** and CRISWELL **, JJ., concur.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),