Carol ELLIS and John Ellis,
Plaintiffs–Appellees,

v.

TOWN OF ESTES PARK,
Defendant–Appellant.

No. 01CA2236.

Colorado Court of Appeals,
Div. III.

Nov. 7, 2002.

Rehearing Denied Dec. 19, 2002.

Certiorari Denied April 14, 2003.

and § 24–51–1105, C.R.S.2002.

Fleishman, Sterling, Gregory & Shapiro, P.C., Steven A. Shapiro, Melissa J. Winthers, Denver, Colorado, for Plaintiffs–Appellees.

Hall & Evans L.L.C., Jennifer L. Veiga, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, the Town of Estes Park, appeals the order denying its motion to dismiss, for lack of subject matter jurisdiction, the claims brought against it by plaintiffs, Carol and John Ellis. We affirm.

In their amended complaint, plaintiffs alleged that Carol Ellis was injured when she tripped over a metal manhole cover of an electrical vault owned, operated, and maintained by the Town as part of its electrical supply system. The manhole was located on private property owned by a third party, who operated a restaurant and lounge. Plaintiffs asserted claims against the Town and the third party for negligence and loss of consortium.

The Town moved to dismiss plaintiffs' complaint as barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2002. Specifically, the Town argued that the electrical vault did not constitute a "public electrical facility" for purposes of a waiver of its immunity under § 24–10–106(1)(e) and (f), C.R.S.2002, because the electrical vault benefited only one property, the restaurant.

The trial court found that, through the electrical vault in question, the Town provided electrical power exclusively to the restaurant, a privately owned business on private property. However, the court further found that the general public patronizing the restaurant received a separate and distinct public benefit from usage of the electricity provided by the Town. Consequently, the court found that the electrical vault was also operated for the benefit of the general public and not solely for the benefit of the property upon which it was located. Accordingly, the court held that the Town's immunity had been waived. The Town then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.2002.

The Town contends that the trial court erred in determining that its immunity under the GIA had been waived. Specifically, the Town argues that, because the electrical vault exclusively provides electrical service to the privately owned restaurant, it does not constitute a "public electrical facility" for purposes of § 24–10–106(1)(e) or (f). We disagree.

Section 24–10–106(1)(e) provides that a public entity's immunity from suit is waived in an action for injuries resulting from "[a] dangerous condition of any public ... electrical ... facility." Similarly, § 24–10–106(1)(f) provides that a public entity's immunity from suit is waived in an action for injuries resulting from the "operation and maintenance of any public ... electrical facility."

We are aware of no Colorado case law determining what constitutes a "public electrical facility" for purposes of either § 24–10–106(1)(e) or (f). However, four opinions have analyzed an analogous question under § 24–10–106(1)(f) regarding whether a water meter pit is a "public water facility."

In *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996), *overruled in part by Corsentino v. Cordova,* 4 P.3d 1082 (Colo. 2000), the supreme court held that a water meter pit that was located on private property, and that the property owner owned and was responsible for maintaining, did not constitute a "public water facility" for purposes of § 24–10–106(1)(f). In reaching this conclusion, the court interpreted the waiver provisions of the GIA narrowly in favor of the governmental entity. Applying that interpretation, the court found that the determinative factor in defining a public facility is whether the facility was operated for the benefit of the public. Because the water meter pit at issue benefited solely the property on which it was located, the *Gallegos* court concluded it did not benefit the general

public and therefore did not constitute a public water facility.

In *Horrell v. City of Aurora,* 976 P.2d 315 (Colo.App.1998), a division of this court, applying the narrow interpretation of immunity set forth in *Gallegos,* held that a water meter pit that was located on private property, but was owned, maintained, and operated by the city, did not constitute a public water facility for purposes of § 24–10–106(1)(f). That the city owned and maintained the water meter pit did not distinguish the case from *Gallegos* in the division's view.

Thereafter, in *deBoer v. Ute Water Conservancy District,* 17 P.3d 187 (Colo.App. 2000), a division of this court held that a water meter pit that was located on private property, but was owned, operated, and maintained by the public entity, did not constitute a public water facility. The court acknowledged that the narrow interpretation of immunity waiver standard set forth in *Gallegos* had been disapproved and that such provisions are to be construed deferentially in favor of victims. *See Corsentino v. Cordova, supra.* Nevertheless, the division noted that the definition of "public facility" set forth in *Gallegos* was still controlling. Accordingly, the division determined that the water meter pit, which benefited solely the property on which it was located, did not constitute a public water facility.

Finally, in *Wisdom v. City of Sterling,* 36 P.3d 106 (Colo.App.2001), a division of this court analyzed whether a water meter pit that serviced a single private business, was located on a city sidewalk, and was owned, operated, and maintained by the city constituted a public water facility. Applying the definition of "public facility" set forth by the supreme court in *Gallegos* and relying on the definitions of "city water system" and "water service" in the municipal code, together with the definition of "water facilities" in the Colorado statutes, the division determined that the water meter pit provided a public benefit and thus constituted a "public water facility" for purposes of § 24–10–106(1)(f). In reaching this conclusion, the division stated that its decision was not inconsistent with *Gallegos* because the water meter pit in that case was neither owned nor maintained by the city. The division also distinguished the decisions in *Horrell* and *deBoer* on the basis that the water meter pits in those cases were located on private property.

Here, the metal manhole cover on which Carol Ellis tripped was located on property owned by the restaurant and covered an electrical vault owned, operated, and maintained by the Town. As noted by the trial court, the electrical vault, which housed a transformer, provided electricity exclusively to the restaurant, which served numerous members of the general public.

The Town's municipal code provides that the light and power department for the Town "shall have control of the operation and maintenance of the electric plant and works for the manufacture, generation, transmission and distribution of electricity." The code specifically provides that the director of the light and power department "shall perform all acts that may be necessary for the prudent, efficient and economical management and protection of the light and power works."

The code also provides that "[a]ll installations of wire, meters, transformers or other material or equipment by the Department at its expense shall remain the property of the Department." In addition, the code states:

> In connection with the purpose and distribution of electrical energy, the [Town of Estes Park Light and Power Enterprise] shall be responsible for, among other things, the construction, operation, repair and replacement of electric power distribution facilities, and administration using revenues and income generated by and earned or acquired in connection with its light and power activities and held and managed in the Town's light and power enterprise fund.

We conclude that these provisions of the Town's code, together with the evidence supporting the trial court's findings, demonstrate that the electrical vault at issue here provides a public benefit. As noted by plaintiffs, the use of transformers and the electrical vaults in which they are located are necessary for the efficient delivery of electrical power over the Town's electrical supply sys-

tem. Thus, although the electrical vault in question obviously benefits the property on which it is located, it also provides a public benefit by permitting the efficient delivery of electricity by the Town.

Contrary to the Town's argument, we do not find the location of the electrical vault on private property to be determinative. *See Burnworth v. Adams County*, 826 P.2d 368 (Colo.App.1991)(holding that despite storm drain's location on private property, it was a public sanitation facility because it was operated for the benefit of the general public). Rather, it is the public benefit of the facility that is more significant. *See Wisdom v. City of Sterling, supra.*

Therefore, we agree with the trial court that, under the circumstances, the electrical vault does not benefit solely the property on which it is located. Consequently, we conclude that it constitutes a "public electrical facility" for purposes of § 24–10–106(1)(e) and (f) and that the trial court properly determined that the Town's immunity was waived under these provisions. Thus, the court did not err in denying the Town's motion to dismiss.

The order is affirmed.

Judge JONES and Judge DAVIDSON concur.